## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF NEW JERSEY

**MATT CUSICK**
4207 A. Aberdeen Dr.
Mount Laurel, New Jersey 08054

        Plaintiff,

     v.

**FOX FORCE, LLC,**
535 Derstine Avenue
Landsdale Pennsylvania

**CONDITION NOW, LLC**
3848 Lehigh Street
Whitehall Pennsylvania 18052

**VHR DATA, LLC**
5858 Park Valley Road
Schnecksville Pennsylvania 18078

**EAST COAST AUTOLINE, LLC**
535 Derstine Avenue
Landsdale Pennsylvania

And

**THOMAS ALLEN**
535 Derstine Avenue
Landsdale Pennsylvania

       Defendants.

CIVIL NO:

## AMENDED COMPLAINT & JURY TRIAL DEMAND

Plaintiff Matt Cusick, ("**Plaintiff**") by way of Complaint against Defendants Fox

Force, LLC, Condition Now, LLC, VHR Data, LLC, East Coast Autoline, LLC and Thomas

Allen (collectively the "**Defendants**") says:

.

## INTRODUCTION

1.      Plaintiff initiates this suit against:

(i) Fox Force, LLC ("**Fox Force**":) for, *inter alia*, breach of contract and the implied covenant of good faith; and

(ii) Defendants VHR Data, LLC East Coast Autoline, LLC and Thomas Allen for engaging in a deliberate and systematic campaign to interfere with Plaintiff's contractual rights; and

(iii) Defendants for engaging in a deliberate and systematic scheme to misappropriate trade secret and proprietary technology, licensed from the Plaintiff.

2.      As detailed below, the Plaintiff developed, at the request of defendant Thomas Allen's ("**Allen**"), certain proprietary software to license to Fox Force. See Exhibit A. The parties memorialized their understanding in a License Agreement dated November 19, 2012 (the "**License Agreement**").

3.      The Plaintiff's proprietary software provided defendants Fox Force and Allen an integrated software system, which allowed them to interface with CarFax and similar entities (the "**CF Software**"). See Exhibit A.

4.      CarFax is headquartered in Centreville, Ohio and offers, among other things, a commercial web-based service that supplies vehicle history reports to individuals and businesses on used cars and light trucks for the American and Canadian consumers (the "**CarFax History Report**").

5.      The CarFax History Report has and continues to provide millions of prospective buyers with a vehicle's history, previous accident information, vehicle service record and prior owner data, thus enabling the potential purchaser to navigate the acquisition of a used vehicle with greater confidence.

6.     The CF Software, designed and developed by the Plaintiff, enabled Fox Force and Allen to access this lucrative market, and provided Fox Force the necessary tools to enter into a contract with CarFax to supply it daily vehicle inspection reports, via the internet.

7.     Pursuant to the License Agreement, the CF Software was the proprietary technology and property of the Plaintiff (the "**Agreement**"). The Plaintiff licensed the CF Software to Fox Force for use in connection with its business.  See Exhibit A.

8.     Because the CF Software was essential to Fox Force's business, the License Agreement provided that for every inspection report ("**Report**") directed to CarFax by Fox Force the Plaintiff was to receive (i) $5.00 as long as the business remained in operation; and (ii) six percent (6%) of the gross sales price if the business was sold (the "**License Fee**"). See Exhibit A.

9.     Despite the Plaintiff's extraordinary effort in designing and developing the CF Software, it became increasingly evident that Allen resented having to pay the License Fee as required by the License Agreement.

10.     At first, Allen laid blame with his accountant for the delays in payment to Plaintiff.

11.     However, Allen eventually confessed that he simply did not want to pay the License Fee.  In fact, in November of 2018 he wrote the Plaintiff that:

> This is not meant to be a contentious thing it's simply a matter of costs and changing marketplace. I hope you came to realize that a long legal battle benefits neither of us.

See Exhibit B.

12.     Allen continued by threatening Plaintiff that he would close the business rather than pay him; and claimed that his father-in-law and:

[h]is good <u>semi-retire attorney</u> friend assured me that we can <u>drag this</u>
<u>out</u> for an extended period of time if needed.

13.     Subsequently, Fox Force and Allen refused to pay the License Fee due pursuant
to the License Agreement or to provide any information to the Plaintiff.

14.     In addition, Fox Force and Allen unlawfully accessed, copied, modified and
altered the Plaintiff's proprietary, CF Software in order to use it in connection with related
businesses owned or controlled by Allen or his family, including but not limited to Condition
Now, LLC, VHR Data, LLC and East Coast Autoline, LLC among others.

15.     Fox Force and Allen surreptitiously provided the CF Software to the LLC
Defendants in order to avoid paying Plaintiff the License Fee due under the License Agreement.

16.     Plaintiff has requested an accounting of the Reports directed to Carfax from
Allen, but Allen has refused and ignored the foregoing, as well as the contractual mandates set
forth in the License Agreement.

17.     As a consequence, Plaintiff initiates this action and seeks, *inter alia* :

> (i)      An injunction prohibiting the Defendants or their affiliates from using
> the CF Software or any software derived or developed therefrom until
> they fully account for the Reports issued to Carfax and pay all sums
> due in connection therewith.
>
> (ii)     A full and complete accounting of all Reports issued to Carfax by Fox
> Force or the LLC Defendants, or any other entity in which Allen had
> an interest.
>
> (iii)    Expedited discovery, including but not limited to permitting the
> Plaintiff to procure the Reports sent by Fox Force and the LLC
> Defendants to CarFax and its affiliates.
>
> (iv)     An injunction prohibiting Defendants from selling their assets,
> cancelling any contracts or taking any other actions designed to
> damage Fox Force.
>
> (v)      Preserving all records and information related to CarFax and the
> Plaintiff.

       (v)     Damages, both actual and punitive, attorney fees, cost of suit and such other relief as the Court deems just and proper.

In support thereof, the Plaintiff avers as follows.

## JURISDICTION AND VENUE

18.     Pursuant to 28 U.S.C. § 1332(a), this Court has jurisdiction as diversity of citizenship exists between the litigants and the damages sought exceed $75,000, exclusive of interest and attorney fees.

19.     More specifically, Plaintiff is a citizen of the State of New Jersey.

20.     Defendants Fox Force, Condition Now, LLC d/b/a Almost PerfectAuto, VHR Data, LLC d/b/a Almost PerfectAuto.com and East Coast Autoline, LLC Defendant (the "**LLC Defendants**") are each citizens of the Commonwealth of Pennsylvania.

21.     The LLC Defendants managing and sole member is defendant Thomas Allen.

22.     Defendant Thomas Allen is a citizen of the Commonwealth of Pennsylvania and maintains his primary business address at 535 Derstine Avenue Landsdale, Pennsylvania.

23.     Venue is properly vested in this judicial district as the Defendant regularly engage in business in the State of New Jersey and a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## PARTIES

24.     Plaintiff is a resident of the State of New Jersey residing at 4207 A. Aberdeen Dr.  Mount Laurel, New Jersey 08054.

25.     Defendant Fox Force is a Pennsylvania limited liability company with its primary office being located at 535 Derstine Avenue Lansdale, Pennsylvania 19446.

26.     Defendant Condition Now, LLC d/b/a Almost PerfectAuto.com is a Pennsylvania limited liability company with its primary office being located at 3848 Lehigh Street Whitehall, Pennsylvania 18052.

27.     Defendant VHR Data, LLC d/b/a Almost PerfectAuto.com is a Pennsylvania limited liability company with its primary office being located at 5858 Park Valley Road Schnecksville Pennsylvania 18078.

28.     Defendant East Coast Autoline, LLC is a Pennsylvania limited liability company with its primary office being located at 535 Derstine Avenue Landsdale Pennsylvania.

29.     Defendant Thomas Allen is a resident of the Commonwealth of Pennsylvania Who maintains his primary business address at 535 Derstine Avenue Landsdale, Pennsylvania.

## FACTUAL BACKGROUND

30.     Plaintiff and Defendant Allen first became acquainted at Kutztown University when they joined the rugby team. Following graduation, Plaintiff and Allen occasionally socialized at gatherings organized by mutual friends.

31.     In or about 2011 Defendant Allen approached the Plaintiff with a business concept whereby Plaintiff would develop an IOS phone application for an automobile inspection application in exchange for an equity interest in Fox Force.

32.     Plaintiff declined the offer, but eventually agreed to provide services on a fee basis as set forth in the License Agreement.

33.     Pursuant to the terms of the License Agreement, Plaintiff was "defined" or referred to as the "Service Provider", under Section 1 thereof. As the Service Provider, Plaintiff was to perform the following:

1.    **SERVICE.**

 **Engagement** Service Provider is engaged by Client to perform computer software implementation and designs service for Fox Force I Phone Application.  The Fox Force website, The Fox Force Database and server  scripts associated with the Fox Force I Phone Application.  The Service Provider is responsible for services agreed to by the Client and the Service Provider.

34.    Fox Force and Allen both agreed that the Services to be provided by the Plaintiff

were proprietary in nature as set forth in Section 4 of the Agreement:

**4. DEFINITIONS.**

**4.1**. **Proprietary Information**.  For purposes of this Agreement, the "Proprietary Information" shall include, without limitation, all Intellectual Property, Work Product, trade secrets of a party and all other information and material that relates or refers to the services, plans, policies, finances, corporate developments, products, pricing, sales, procedures, intra-corporate transactions, suppliers, prospects and customers of a party, as well as financial information relating to such suppliers, prospects and customers, and any other confidential information and material which such party does not make generally available to the public.

**4.2.** **Intellectual Property**.  For purposes of the Agreement, the term "Intellectual Property" means all intellectual property and proprietary rights including without limitation all computer software, including object codes and source codes, data, data bases, computer software and data base, programs technologies, systems, structures and architecture and the processes, formal, compositions, improvements, inventions, discovery, concepts, ideas, design methods, and information developed, acquired, owned, or produced at any time by Service Provider and all work product, non public information and material relating to the business of the Client.  Rights of inventor ship and authorship, inventions, inventions, patents, patent applications, and know-how for any product, process, method, machine, manufacture, design, composition of matter, or any new or useful improvement thereof, as well as copyrights, trademark, trade dress and service mark rights and all rights in trade secrets, computer software, data and databases, and mask works relating to the business of the Client, owned or produced at any time by Service Provider.

**4.3**  **Work Product.**  For purposes of this Agreement, the term, "Work Product" means all work products deliverables and documentation developed by Service Provider under this Agreement, including any expression of Service Provider's findings, reports, analyses, conclusions, recommendations, or ideas.

**4.4.** **Confidential Information**. For purposes of this Agreement, the "Confidential Information" shall include, without limitations all Intellectual, Work Product, and all trade secrets of a party and all other information and material that relates or refers to the plans, policies, finances, corporate developments, products, pricing, sales, services, procedures, intra-inter corporate transactions, suppliers, prospects, and customers and any other suppliers prospects, and customers and any other similar confidential information which such party and Client does not make generally available to the public.

See Exhibit A.

35.     The Plaintiff, Fox Force and Allen further agreed that the proprietary software

developed by the Plaintiff was his property:

**4.5.** **Service Provider Property**. For purposes of the Agreement, "Service Provider Property" means: (i) Intellectual Property incorporated into the Services or any deliverables under this Agreement; and (ii) Intellectual Property conceived, produced or developed by Service Provider, whether directly or indirectly or alone or jointly with others, in connection with or pursuant to Service Provider's performance of the Agreement…

See Exhibit A.

36.     Finally, Fox Force and Allen understood and agreed that they only procured a

license to the proprietary data and confidential information.

37.      As a result, Section 5 provided that:

**5.3** **License Rights**. For the term of this Agreement, and subject to the terms and conditions of this Agreement, Service Provider hereby grants to Client, and Client hereby accepts, worldwide rights to use directly or indirectly through partners or known customer the Service Provider Products, and to publicly perform and display and otherwise perform all acts contemplated under this Agreement (the "Right of Use").

38.     Because the CF Software was essential to Fox Force's business, the Defendant

and Allen agreed that for every inspection report ("**Report**") directed to CarFax by Fox Force,

the Plaintiff was to receive:

(i) $5.00 as long as the business remained in operation; and

(ii) six percent (6%) of the gross sales price if the business was sold (the "**License Fee**").

<u>See</u> Exhibit A.

39.     During the initial development stage, the Plaintiff worked nights and weekends, (often times 15 hour per day) coding the IOS application, websites, and the backend of the server.

40.     In or about November of 2013 Fox Force sold its initial Reports to CarFax.

41.     Thereafter, the Plaintiff continued providing extensive services including:

(i)   Migrating the website to a new host.

(ii)   Configuring backups of the data.

(iii)  Maintaining appropriate security updates.

(iv)  Addressing various issues or "bugs" as requested in the application, website and server scripts.

(v)   Setting-up domains, DNS records, mail server configs, researched many things and provided feedback including online backup (clowd, ftp) storage solutions, database synchronization.

(vi)  Updating the iOS application.

(vii) Programming cron and batch scripts for server ftp backups to drivehq.com account.

42.     Finally, the Plaintiff updated the system; integrated a 3D model application and created the backend for a new inspection report. Both the 3D model application and the inspection report have been used by Condition Now, LLC.

43.     Notwithstanding the Plaintiff's extensive effort, as well as the express terms of the License Agreement, Allen began to refer to the Plaintiff as a "liability" because his workload was decreasing as the system came online.

44.     As time went on Allen ceased regular communication with the Plaintiff and began skipping payments in 2018 for weeks at a time, ignored the Plaintiffs phone calls and texts when he notified Allen that payments have stopped. In response, Allen would routinely blame his accountant or a "banking error".

45.     In April of 2018 Allen stopped all payments to the Plaintiff and offered him $20,000 to buy out his rights under the Agreement; and then threatened him by suggesting he would retain counsel who worked for his father-in-law and would "drag" out the case for an extended period of time. See Exhibit B.

46.     Since then, Allen has refused to provide any compensation to the Plaintiff due and owing under the License Agreement.

47.      Moreover, Allen has formed multiple companies, individually or with the assistance of others, including but not limited to Condition Now LLC, VHR Data LLC, East Coast Autoline LLC, one or more of which use the tradename Almost PerfectAuto.com (collectively the "**LLC Defendants**").

48.     Allen, has organized the LLC Defendants for the purpose of avoiding his obligations pursuant to the License Agreement; and in order to misappropriate the proprietary technology developed by the Plaintiff.

49.     The information required by the Plaintiff to determine what may be due to him pursuant to the License Fee is under the exclusive dominion and control of the Defendants.

## CAUSES OF ACTION

### COUNT I
(Breach of Contract)

50.     Plaintiff repeats the allegations of the preceding paragraphs as of set forth herein at length.

51.     To state a claim for breach of contract under New Jersey law, a plaintiff must allege: (1) the existence of a valid contract between itself and the defendant; (2) that the defendant materially breached the contract; and (3) the plaintiff suffered damages as a result of the breach. *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.,* 421 F. Supp. 2d 831, 833 (D.N.J.2006) (citing *Coyle v. Englander's,* 488 A.2d 1083 (N.J. Super. Ct. App. Div. 1985)).

52.     In this case, Plaintiff and Defendant entered into a License Agreement on or about November 19, 2012.

53.     Pursuant to the terms of the License Agreement entered into by Plaintiff and Fox Force, Plaintiff developed certain proprietary technology and software for use by Fox Force in connection with the business relationship with CarFax.

54.     After Plaintiff performed substantial services, the principal of Fox Force, Allen, increasingly voiced his objection to paying the Plaintiff the License Fee due under the License Agreement. In fact, Allen began to refer to Plaintiff as a "liability" once his work was completed.

55.     In November of 2008, Allen admitted in writing he no longer desired to remit the License Fee to Plaintiff because it was simply a "matter of cost and changing marketplace." See Exhibit B. .

56.     Allen further threatened the Plaintiff by suggesting that he could "drag" litigation on for an extended period, based on the advice given to him by his father-in-law and his good semi-retired attorney friend.  See Exhibit B.

57.     Nonetheless, Fox Force, in breach of the License Agreement, continued to use the software; while Allen caused the Plaintiff's proprietary technology to be transferred to Condition Now, LLC, the VHR Data, LLC, and East Coast Autoline, LLC, one of more, which trades as Almost PerfectAuto.com, without compensation.

58.     The formation of Condition Now, LLC, VHR Data, LLC, and East Coast Autoline, LLC and the transfer of Plaintiff's proprietary CF Software was orchestrated by Allen to avoid paying the Plaintiff the License Fee as required by the License Agreement.

59.     The Plaintiff has requested an accounting of the reports directed to CarFax and Allen has refused and ignored the foregoing as well as the contractual mandates set forth in the License Agreement.

60.     Consequently, Fox Force has breached the terms of the License Agreement and damaged the Plaintiff.

**Wherefore**, Plaintiff demands Judgment against Fox Force for breach of contract, and an award of damages, attorney fees, costs of suit and such other relief as the Court deems just and proper.

<u>**COUNT II**</u>
(Breach of the Implied Covenant of Good Faith)

61.     Plaintiff repeats the allegations of the preceding paragraphs as of set forth herein at length.

62.     In addition to the express terms of the contract, the law provides that every contract contains an implied covenant of good faith and fair dealing.  This means that, even though not specifically stated in the contract, it is implied or understood that each party to the contract must act in good faith and deal fairly with the other party in performing or enforcing the terms of the contract.  <u>See</u> *Sons of Thunder v. Borden, Inc.,* 148 N.J. 396 (1997).

63.     A party may not act in bad faith, dishonestly, or with improper motive to destroy or injure the right of the other party to receive the benefits or reasonable expectations of the contract.  N.J. Model Civil Jury Charges § 4.10(J)*; *<u>see</u> also *Sons of Thunder v. Borden Foods,* 148 N.J. 396 (1997).

64.     In the instant matter, Fox Force, has breached the terms of the implied covenant of good faith and fair dealing by acting dishonestly, in bad faith and with an improper motive. Specifically, Allen threatened the Plaintiff with baseless and lengthy litigation in an effort to extort a "cheap" buy-out of his obligations under the License Agreement. Allen further threatened to close the company if Plaintiff attempted to enforce the terms of the License Agreement; and organized the LLC Defendants in an effort to skirt Fox Force's obligations under the License Agreement.

65.     Fox Force's conduct breached the implied covenant of good faith and fair dealing.

66.     Consequently, the Plaintiff has been damaged.

**Wherefore**, Plaintiff demands Judgment against Fox Force for breach of the implied covenant of good faith; and an award of damages, punitive damages, attorney fees, costs of suit and such other relief as the Court deems just and proper.

## COUNT III
(Interference with Contractual Relations)

67.     Plaintiff repeats the allegations of the preceding paragraphs as of set forth herein at length.

68.     In order to establish a claim for tortious interference with contractual relations, a Plaintiff must prove: 1) actual interference with a contract; 2) that the interference was inflicted initially by a Defendant who is not a party to the contract; 3) that the interference was without justification, and 4) that the interference caused damage. See *Printing Mart-Morristown v. Sharp Elec. Corp.*, 116 N.J. 739, 746 (1989).

69.     A party acts intentionally if they know of the existence of a contract but are not a party to the contract.

70.     In this case, Defendants Allen, Condition Now, LLC, VHR Data, LLC, and East Coast Autoline, LLC were not parties to the License Agreement yet they intentionally and deliberately interfered with the Plaintiff's rights thereunder.

71.     Allen, on an individual basis, interfered with the contact by threatening the Plaintiff with litigation; refusing to make payment in order to advance his own interests, and transferred Plaintiff's proprietary technology to the LLC Defendants in order to benefit himself and his family personally by avoiding the obligation to pay the License Fee.

72.     Moreover, Condition Now, LLC, VHR Data, LLC, and East Coast Autoline, LLC interfered with the Plaintiff's contractual rights under the License Agreement by misappropriating, for their own use, proprietary software provided to Fox Force under the terms of the License Agreement with full knowledge thereof.

73.     Both Allen and the LLC Defendant's actions have been designed specifically to interfere with Plaintiff's agreement with Fox Force.

74.     The actions taken by Allen and the LLC Defendants were not justified.

75.     Consequently, Plaintiff has been damaged.

**Wherefore**, Plaintiff demands Judgment against Allen and each of the LLC Defendants jointly and severally for tortious interference with contractual relations; and  awarding them damages, punitive damages, attorney fees, costs of suit and such other relief as the Court deems just and proper.

## COUNT IV
(Accounting)

76.     Plaintiff repeats the allegations of the preceding paragraphs as of set forth herein at length.

77.     An "accounting" is an equitable remedy available in New Jersey under appropriate circumstances.  See *Jarwick Devs., Inc. v. Wilf*, 2006 N.J. Super. Unpub. LEXIS 2221, (App. Div. Dec. 15, 2006) (citing *Savage v. Dowrie*, 111 N.J. Eq. 108, 109-110.

78.     The basis for an equitable action for an accounting is the existence of a fiduciary or trust relationship respecting the subject matter of the controversy.  The fiduciary relationship necessary to obtain an accounting is creating by the plaintiff entrusting to the defendant some money or property with respect to which the defendant is bound to reveal his dealings.  Id., see also *Transtech Indus. v. Certain Underwriters*, 2009 N.J. Super. Unpub. LEXIS 3167, 4 (App. Div. July 21, 2009).

79.     In New Jersey, the equitable jurisdiction to compel an accounting rests upon three grounds: First, the existence of a fiduciary or trust relation; second, the complicated character of the accounts; and third, the need for discovery." See *Burdick v. Grimshaw*, 113 N.J. Eq. 591, 603 (1933).

80.     In the instant matter, the Plaintiff is entitled to accounting as a matter of equity. Fox Force was entrusted with the Plaintiff's proprietary technology, the CF Software.

81.     In breach of this trust based relationship and its contractual and fiduciary obligations, Fox Force not only failed to protect such information, but deliberately transferred it to third parties without the Plaintiff's permission for the express purpose of avoiding payment of the License Fee.

82.     Now that more that at least four (4) companies have procured such information from Fox Force and Allen, the reconciliation of the proceeds wrongfully misappropriated is a complex process and would require an inordinate amount of time for Plaintiff to review and analyze.

83.     Plaintiff therefore requests the Defendants be ordered to account for all such proceeds. Specifically, the Defendants should be ordered to produce all relevant financial records pertaining to the claims asserted herein

84.     As such, Plaintiff requests the Defendants be compelled to account for each and every Report issued pursuant to the License Agreement or as a result of the proprietary software developed under the terms of the License Agreement

85.     The LLC Defendants are owned by Allen or a family member; are each in a business similar to that of Fox Force, are using Plaintiff's proprietary software or a derivative thereof in support of their operation.

86.     The LLC Defendants and Allen have misappropriated these assets for their own use.

87.     Consequently, Defendants must be compelled to provide an accounting to the Plaintiff.

**Wherefore**, Plaintiff demands an accounting from each of the named Defendants herein for all Reports issued to CarFax and income derived therefrom, for the time period 2015 to the present.  In addition, Plaintiff requests attorneys' fees, cost of suit and such other relief as the Court deems just and proper.

## <u>COUNT V</u>
(Fraudulent Inducement)

88.     Plaintiff repeats the allegations of the preceding paragraphs as of set forth herein at length.

89.     In order to establish a claim for fraudulent inducement, five elements must be shown:  1) a material representation of a pre-existing or present fact; 2) made with knowledge of

its falsity; and 3) with the intention that the other party rely thereon; 4) resulting in reliance by

that party; 5) to his detriment.  See *Nolan v. Lee Ho*, 120 N.J. 465, 472 (1990).

90.     In this instance, Defendants Allen and Fox Force represented to the Plaintiff that

they fully intended to comply with the terms of the License Agreement.

91.     However, as time passed, it became increasingly evident that Allen and Defendant

Fox Force never had any such intention and such promises were simply a pretense to induce the

Plaintiff to perform the services they required to procure business from CarFax.

92.     In fact, as soon as the Plaintiff completed the work, Allen immediately suggested

that he was a "liability" and attempted to buy-out Plaintiff's interest under the License

Agreement. When Plaintiff would not agree, Defendants simply stopped paying the License Fee

and threatened him with protracted litigation.

93.     The Defendants' actions and threats established their true intention and the false

and misleading nature of the foregoing representations.

94.     The Defendants made the foregoing representations with the intention that the

Plaintiff rely thereon, which he reasonably did, to his detriment.

95.     Consequently, Plaintiff has been damaged.

**Wherefore**, Plaintiff demands damages, both actual and punitive, attorneys' fees, interest,

cost of suit, and such other relief as the Court deems just and proper.

## COUNT VI
(Conversion)

96.     Plaintiff repeats the allegations of the preceding paragraphs as of set forth herein

at length.

97.     By and through their actions more specifically defined above, the Defendants

converted through their misappropriation of the proprietary technology and software developed

by the Plaintiff, pursuant to the License Agreement, for their own personal use, enjoyment, and development.

98.     Defendants wrongfully converted such trade secrets to their exclusive use and to the exclusion of the Plaintiff.

**Wherefore**, Plaintiff demands damages, both actual and punitive, attorneys' fees, interest, cost of suit, and such other relief as the Court deems just and proper.

## COUNT VII
(Defend Trade Secrets Act 18 USC 1833)

99.     Plaintiff repeats the allegations of the preceding paragraphs as of set forth herein at length.

100.     The Defend Trade Secrets Act of 2016 ("**DSTA**") authorizes a trade secret owner to file a civil action in federal district court seeking relief for trade secret misappropriation related to a product or service used in or intended for use in interstate or foreign commerce. 18 USC 1833.

101.     Available remedies under the DTSA include:

(i) An injunction to preserve evidence and prevent trade secret disclosure, provided that it does not:

(ii) prevent a person from entering into an employment relationship, and that conditions placed on such employment are based on evidence of threatened misappropriation and not merely on the information the person knows; or

(iii) otherwise conflict with an applicable state law prohibiting restraints on the practice of a lawful profession, trade, or business.

102.     In addition, the DTSA permits damages measured by:

(i) actual loss and unjust enrichment, to the extent not accounted for in actual loss calculation; or

(ii) a reasonable royalty for the unauthorized disclosure or use of the trade secret.

103.    The DTSA further permits exemplary damages for willful and malicious misappropriation.

104.    Finally, the prevailing party is entitled to reasonable attorneys' fees if the misappropriation claim is made in bad faith; a motion to terminate an injunction is made or opposed in bad faith; or the trade secret was willfully and maliciously misappropriated.

105.    In this case, the Plaintiff developed at Allen's request certain proprietary software to license to Fox Force. See Exhibit A. The parties memorialized their understanding in a License Agreement dated November 19, 2012 (the "**License Agreement**").

106.    The Plaintiff's proprietary software provided defendants Fox Force and Allen an integrated software system, which allowed them to interface with CarFax and similar entities (the "**CF Software**"). See Exhibit A.

107.    The CF Software, designed and developed by the Plaintiff, enabled Fox Force and Allen to access this lucrative market, and provided Fox Force the necessary tools to enter into a contract with CarFax to supply it daily vehicle inspection reports, via the internet.

108.    Pursuant to the License Agreement, the CF Software was the proprietary technology and property of the Plaintiff (the "**Agreement**"). The Plaintiff licensed the CF Software to Fox Force for use in connection with its business.  See Exhibit A.

109.    Because the CF Software was essential to Fox Force's business, the License Agreement provided that for every inspection report ("**Report**") directed to CarFax by Fox Force the Plaintiff was to receive (i) $5.00 as long as the business remained in operation; and (ii) six percent (6%) of the gross sales price if the business was sold (the "**License Fee**"). See Exhibit A.

110.    Despite the Plaintiff's extraordinary effort in designing and developing the CF Software, it became increasingly evident that Allen never intended to pay the compensation due License Fee for each Report issued, as required by the License Agreement.

111.    At first, Allen laid blame with his accountant for the delays in payment to Plaintiff.

112.    However, Allen eventually confessed that he simply did not want to pay the License Fee.  In fact, in November of 2018 he wrote the Plaintiff that:

> This is not meant to be a contentious thing it's simply a matter of costs and changing marketplace. I hope you came to realize that a long legal battle benefits neither of us.

See Exhibit B.

113.    Allen continued by threatening Plaintiff that he would close the business rather than pay him; and claimed that his father-in-law and:

> [h]is good semi-retire attorney friend assured me that we can drag this out for an extended period of time if needed.

114.    Subsequently, Fox Force and Allen refused to pay the License Fee due pursuant to the License Agreement or to provide any information to the Plaintiff.

115.    In addition, Fox Force and Allen unlawfully accessed, copied, modified and altered the Plaintiff's proprietary, CF Software in order to use it in connection with related businesses owned or controlled by Allen or his family, including but not limited to Condition Now, LLC, VHR Data, LLC and East Coast Autoline, LLC among others.

116.    Fox Force and Allen surreptitiously provided the CF Software to the LLC Defendants in order to avoid paying Plaintiff the License Fee due under the License Agreement.

**Wherefore**, Plaintiff demands damages, both actual and punitive, injunctive relief as permitted by the DSTA attorneys' fees, interest, cost of suit, and such other relief as the Court deems just and proper.

## COUNT VIII
(Misappropriation of Trade Secrets-NJSA NJSA 56:15-1 et seq.)

117. Plaintiff repeats the allegations of the preceding paragraphs as of set forth here and at length.

118. The New Jersey Trade Secrets Act, delineated at NJSA 56:15-1 et seq. ("**NJTSA**"), establishes a statutory framework to address claims for the misappropriation of trade secrets and provides new statutory remedies to employers seeking to protect them.

119. As used in the NJSTA:

"Improper means" means the theft, bribery, misrepresentation, breach or inducement of a breach of an express or implied duty to maintain the secrecy of, or to limit the use or disclosure of, a trade secret, or espionage through electronic or other means, access that is unauthorized or exceeds the scope of authorization, or other means that violate a person's rights under the laws of this State;

"Misappropriation" means:
(1) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
(2) Disclosure or use of a trade secret of another without express or implied consent of the trade secret owner by a person who:
(a) used improper means to acquire knowledge of the trade secret; or
(b) at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was derived or acquired through improper means; or
(c) before a material change of position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired through improper means.

"Person" means a natural person, corporation, business trust, estate, trust, partnership, association, joint venture, government, governmental subdivision or agency, or any other legal or commercial entity.

"Trade secret" means information, held by one or more people, without regard to form, including a formula, pattern, business data compilation, program, device, method, technique, design, diagram, drawing, invention, plan, procedure, prototype or process, that:

(1) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

(2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

120. In the event of:

a. Actual or threatened misappropriation may be enjoined. Upon application to the court, an injunction shall be terminated when the trade secret has ceased to exist, but the injunction may be continued for an additional reasonable period of time in order to eliminate commercial advantage that otherwise would be derived from the misappropriation.

b. In exceptional circumstances, an injunction may condition future use upon payment of a reasonable royalty for no longer than the period of time for which use could have been prohibited. Exceptional circumstances include, but are not limited to, a material and prejudicial change of position prior to acquiring knowledge or reason to know of misappropriation that renders a prohibitive injunction inequitable.

c. In appropriate circumstances, affirmative acts to protect a trade secret may be compelled by court order.

121. In addition an injured party's damages may:

[i]nclude both the actual loss caused by misappropriation and the unjust enrichment caused by misappropriation that is not taken into account in computing actual loss. In lieu of damages measured by any other methods, the damages caused by misappropriation may be measured by imposition of liability for a reasonable royalty for a misappropriator's unauthorized disclosure or use of a trade secret.

122.     Finally, if willful and malicious misappropriation exists, the court may award punitive damages in an amount not exceeding twice any award made under subsection a. of this section.

123.     The court may award to the prevailing party reasonable attorney's fees and costs, including a reasonable sum to cover the service of expert witnesses, if:

        a. willful and malicious misappropriation exists;
        b. a claim of misappropriation is made in bad faith; or
        c. a motion to terminate an injunction is made or resisted in bad faith.

124.     In this instance, the Defendants Fox Force and Allen acknowledged that the CF Software proprietary technology was confidential information, a trade secret of the Plaintiff and subject to the terms of the License Agreement.

125.     The Defendants have nonetheless misappropriated the foregoing trade secrets for their own personal and business purposes.

126.     The Plaintiff's trade secret and proprietary data have independent economic value from not being generally or readily known.

127.     The Defendant's actual and threatened use of the Plaintiff's proprietary data permits the Plaintiff to seek injunctive relief and damages.

**Wherefore**, Plaintiff demands damages, both actual and punitive, injunctive relief as permitted by NJSTA, attorneys' fees, interest, cost of suit, and such other relief as the Court deems just and proper.

## COUNT VIII
(Preliminary and Permanent Injunction)

128.     Plaintiff repeats the allegations of the preceding paragraphs as of set forth herein at length.

129.     Plaintiff is entitled to the issuance of a preliminary injunction.  See *Crowe v. De Gioia*, 179 N.J. 126 (1982).

130.     In order to sustain a claim for a preliminary injunction, the plaintiff must establish that: 1) there is a likelihood of irreparable harm to the Plaintiff; 2) the balance of harm favors the movan; 3) there is a likelihood of success on the merits of the case, and 4) the public interest favors the granting of injunctive relief.

131.     In this instance, the Defendants have violated the Plaintiff's interest in its proprietary technology, which technology was unique and developed solely in connection with the License Agreement. Thus, Defendants should be enjoined from further use hereof, including any derivative software derived from the CF Software.

132.     Consequently, the misuse of Plaintiff's property results in irreparable harm and damage to Plaintiff.

133.     The likelihood of success on the merits is significant, as Defendant has admitted that the sole reason he refused to remit payments was due to the "costs" involved.

134.     Moreover, Allen transferred Plaintiff's proprietary CF Software to other companies that he owned and controlled for his own economic benefit in an attempt to defraud the Plaintiff further.

135.     The public interest clearly weighs in favor of compliance with contracts and to ensure that the individual's interest in their property and business wellbeing is protected.

136.     The Defendant's actions have been reprehensible, inexcusable, and without justification.

137.     The Plaintiff, therefore, has a substantial chance of prevailing on the merits, as the facts are not in dispute.

138.    As such, there is no risk of harm to these Defendants other than to force them to comply with their obligation and to account for their wrongful conduct to date.

139.    Consequently, Plaintiff seeks injunctive relief.

140.    Plaintiff requests a preliminary and permanent injunction against the Defendants.

**Wherefore**, Plaintiff demands an injunction, damages, both actual and punitive, attorneys' fees, interest, cost of suit, and such other relief as the Court deems just and proper.

## Jury Trial Demand

Plaintiff demands a jury trial on all counts not seeking equitable relief.

**Harty Law Group, PLLC**

*s/ Thomas S. Harty, Esq.*
**Thomas S. Harty, Esq.  (49987)**
123 S. Broad Street
Suite 2140
Philadelphia, PA  19109
267.232.5650
Attorneys for Plaintiff